**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISTIAN MICHAEL
SMITHSON,

        Plaintiff,

        v.

THE YORK COUNTY COURT OF
COMMON PLEAS, et al.,

        Defendants.

CIVIL ACTION NO. 1:15-cv-01794

(KANE, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

The plaintiff, Christian Michael Smithson,[1] filed his original *pro*

---

[1] Smithson appears to subscribe to the specious "redemptionist" theory, common among individuals in the sovereign citizen, militia, and tax protestor movements. Adherents to this "redemptionist" theory believe

> that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1993, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free.

*Monroe v. Beard*, 536 F.3d 198, 203 n.2 (3d Cir. 2008). Other hallmarks include the characterization of laws of general applicability and court rulings as "contracts" between the government and the litigant, *see, e.g.*, *Roche v. Attorney Gen.*, 420 Fed. App'x 124, 125 & n.2 (3d Cir. 2011)

*(continued on next page)*

*se* complaint on September 4, 2015. (Doc. 1). He filed an amended complaint as a matter of course on September 28, 2015. (Doc. 9). In essence, he claims that he is entitled to an award of damages from the defendants in the amount of $250,000 per day of his incarceration—beginning on July 13, 2015, and continuing through the present—pursuant to two "notices" that he appears to claim operate in the nature of self-executing contracts between himself and the defendants. Thus, he appears to seek an award of contractual damages totaling nearly $100 million. He also seeks injunctive relief: an order dismissing the

---

(per curiam), the use of "copyrighted" personal names, *see Monroe*, 536 F.3d at 203 & n.2, and the use of a hyphen and/or colon to signify a plaintiff's "real" name, *see United States v. Rigler*, 885 F. Supp. 2d 923, 930 n.4 (S.D. Iowa 2012); *Audio Invs. v. Robertson*, 203 F. Supp. 2d 555, 565 n.2 (D.S.C. 2002). Here, the plaintiff refers to himself in the caption of his pleadings as "Christian Michael : Smithson ©," the "Secured Party/Petitioner/Plaintiff" in this action. (*See, e.g.*, Doc. 9). In signing each of his pleadings and motion papers, he has identified himself as "Christian Michael : Smithson ©, A natural free born American Inhabitant, Sui Juris, De Jure Soli, Jure Divino, Secured Creditor, Sovereign Diplomat[,] Without Prejudice All Rights Reserved[,] (UCC 1-308/formerly 1-207 and/or UCC 1-103(b))." (*See, e.g., id.*). The Court declines to participate in this sophomoric exercise, and has docketed this case simply as having been brought by Christian Michael Smithson, his real *and* legal name. The style or capitalization of his name in the caption is of no legal significance in any event, but merely identifies Smithson as the party bringing this action. *See Jaeger v. Dubuque Cty.*, 880 F. Supp. 640, 643–44 (N.D. Iowa 1995).

state criminal charges against him and directing that he be released from custody. He purports to bring this action in federal court under 42 U.S.C. § 1981.

On December 2, 2015, Smithson filed a motion for a preliminary injunction, seeking to freeze all of the defendants' assets.

## I.   BACKGROUND

At the time of filing, Smithson was a criminal defendant in proceedings before the Court of Common Pleas for York County, Pennsylvania. *See Commonwealth v. Smithson*, Docket Nos. CP-67-CR-0007794-2012, CP-67-CR-0000709-2013 (York County C.C.P.). The charges are not specified in his pleadings, but it appears that he was found guilty and sentenced to serve a prison term while this federal civil action was pending, based on his transfer from the York County Prison to SCI Rockview, a state correctional institution located in Centre County, Pennsylvania.

It is clear from the pleadings and motion papers filed in this action that Smithson is an adherent

> to the belief that even though he was born and resides in the United States, he is his own sovereign and is therefore not a United States citizen. This belief is the hallmark of the sovereign citizen movement. So-called

> sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings.

*Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011) (footnote omitted). *See generally* Charles E. Loeser, *From Paper Terrorists to Cop Killers: The Sovereign Citizen Threat*, 93 N.C. L. Rev. 1106, 1120–29 (2015) (describing the common beliefs and tactics of sovereign citizens).

The tactic adopted by Smithson here was the preparation of a "Notice" dated July 26, 2015, advising the state trial court that he was a "secured party" under the Uniform Commercial Code, distinct from the "defendant" subject to criminal proceedings, and that he was therefore not subject to the jurisdiction of the state court. (Doc. 1, at 8–24). The notice further provided that, unless the state court or the county district attorney's office provided "verifiable evidence" to contradict his claims of sovereignty and the court's lack of jurisdiction, their failure to respond would constitute silent assent to a contract under which they would be liable to Smithson for contractual damages in the amount of $250,000 per day of his incarceration. (*Id.*). On September 1, 2015, Smithson prepared a superseding "Notice of International Commercial Claim Within the Admiralty," advancing substantially the same claims, but

this time naming the rest of the defendants as well. (Doc. 10, at 22–27).

As with the original "Notice," Smithson contends that the "International

Commercial Claim" document is a self-executing contract, and that the

defendants' failure to respond to it constitutes their silent assent to be

bound by its terms.

On August 6, 2015, Smithson began submitting invoices charging

the defendants $250,000 per day of his incarceration, which began on

July 13, 2015. (*See, e.g.*, Doc. 1, at 26). He filed a collection of these

invoices as exhibits to his original and amended complaints, and he has

continued to intermittently submit them for filing in this action. (*See,*

*e.g.*, Doc. 10). His most recent invoice—the 349th such invoice—was

filed on July 25, 2016, and purported to bill the defendants $5,250,000

for the period June 27, 2016, through July 17, 2016. (Doc. 78).

## I.   MOTION FOR PRELIMINARY INJUNCTION

As an initial matter, we consider Smithson's motion for a

preliminary injunction. (Doc. 23). By this motion, Smithson requests a

preliminary injunction freezing all of the defendants' assets until this

case is resolved. He claims that preliminary injunctive relief is

necessary to prevent the defendants from "squandering" funds that they

"no longer own" because they owe him approximately $100 million in damages under the purportedly self-executing "International Commercial Claim Contract." (*See* Doc. 23; *see also* Doc. 10, at 22–27 (purported contract)). But the Supreme Court of the United States has made it clear that federal district courts have "no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication of [a plaintiff's] claim for money damages." *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999). Accordingly, it is recommended that Smithson's motion for a preliminary injunction (Doc. 23) be denied.

## II.   THE AMENDED COMPLAINT

### A. Legal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions

brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

An action is "frivolous where it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Thomas v. Barker*, 371 F. Supp. 2d 636, 639 (M.D. Pa. 2005). To determine whether it is frivolous, a court must assess a complaint "from an objective standpoint in order to determine whether the claim is based on an indisputably meritless legal theory or clearly baseless factual contention." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)); *Thomas*, 371 F. Supp. 2d at 639. Factual allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional." *See Denton*, 504 U.S. at 32–33. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33. A district court is further permitted, in its sound discretion, to dismiss a claim "if it determines that the claim is of

little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch*, 67 F.3d at 1089.

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) or § 1915(e)(2) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding the motion, the Court may consider the facts alleged on the

face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## B. Discussion

This action should be dismissed *sua sponte* as frivolous and for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), § 1915(e)(2)(B)(ii), and § 1915A(b)(1).

Smithson purports to bring this action under 42 U.S.C. § 1981. He appears to rely on § 1981 in the mistaken belief that it creates a federal cause of action for the making or enforcement of contracts in general. It does not. Section 1981 prohibits *racial discrimination* in the making and enforcement of contracts. *See Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 400, 406 (M.D. Pa. 1995). "To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548,

569 (3d Cir. 2002). Smithson has not alleged racial discrimination, nor any interference with his right to make and enforce contracts. Moreover, all of the defendants in this action are state governmental officials or state agencies, and there is no private right of action against state actors under § 1981. *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 516 (E.D.N.Y. 2010) ("Section 1981 provides redress for purely private acts of racial discrimination."). Smithson has failed to state a claim under § 1981 upon which relief can be granted.

As a *pro se* litigant, we are obliged to liberally construe Smithson's amended complaint and consider whether he has stated a claim under 42 U.S.C. § 1983, the appropriate statute for remedy of civil rights by state actors. Section 1983 provides a private cause of action with respect to the violation of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or

> Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States
> or any other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). As noted above, Smithson has failed to allege racial discrimination or interference with his right to make and enforce contracts, and he has failed to allege the deprivation of any other rights protected by the Constitution. To the contrary, he appears to assert a simple—and fundamentally flawed—breach of contract claim.[2]

---

[2] Although the Contract Clause, U.S. Const. art. I, § 10, cl. 1, does prohibit states from using their legislative authority to impair an existing contract, *see generally E & E Hauling, Inc. v. Forest Pres. Dist. of Du Page Cty., Ill.*, 613 F.2d 675, 678 (7th Cir. 1980), it does not transmute a common breach of contract claim into a constitutional issue. *See Uptown People's Cmty. Health Servs. Bd. of Dirs. v. Bd. of*

(continued on next page)

Fundamentally, Smithson's claim is a state-law claim for breach of contract. He claims that the defendants have no authority to incarcerate him because he is a "sovereign citizen" and thus not subject to the laws of the Commonwealth of Pennsylvania—a patently frivolous claim. *See Commonwealth v. Williams*, No. 2089 EDA 2014, 2015 WL 6458000, at \*4 (Pa. Super. Ct. Oct. 7, 2015). While incarcerated, he claims to have unilaterally contracted with the defendants by means of a demand notice that says that failure to respond will be construed as consent, a process purportedly authorized by the Uniform Commercial Code—a claim that is "simply incorrect as a matter of black-letter contract law." *Brown v. Aponte*, Civil Action No. 06-2096, 2006 WL 2869524, at \*4 (E.D. Pa. Oct. 3, 2006); *see also Galyean v. Nw. Trustee Serv. Inc.*, No. C13-1359 MJP, 2014 WL 1416864, at \*8 (W.D. Wash. Apr. 14, 2014) (dismissing claim for breach of "International Commercial Claim within Admiralty").

None of the defendants signed the purported contract or otherwise

---

*Comm'rs of Cook Cty.*, 647 F.2d 727, 733 (7th Cir. 1981). Smithson does not allege the prior existence of a contract that the state legislature now seeks to impair, but merely a breach of the purportedly self-executing contract he claims to have unilaterally formed with the defendants.

responded to it. Under Pennsylvania law, "[t]o be a contract, the offer

must be accepted. An offeree has a right to make no reply to offers, and

his silence and inaction cannot be construed as an assent to the offer."

*In re Baum's Estate*, 117 A. 684, 685 (Pa. 1922); *see also Cohen v.*

*Johnson*, 91 F. Supp. 231, 236 (M.D. Pa. 1950) (citing *Baum's Estate*).

> To form an enforceable contract, both parties must manifest an intention to be bound by its terms. The "decisive inquiry in contract formation is the 'manifestation of assent of the parties to the terms of the promise and to the consideration for it.'" Silence will not constitute acceptance of an offer in the absence of a duty to speak. Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting.

*Brown*, 2006 WL 28869524, at *3 (citations omitted). Smithson's

unilateral attempt to impose a contractual obligation did not create a

duty on the part of the defendants to respond, and their mere silence, in

the absence of any intent by them to be bound, could not create a valid

contract. *See id.* Accordingly, Smithson has failed to state a breach of

contract claim upon which relief can be granted. Indeed, it is clear that

his claim is based on an indisputably meritless legal theory, and thus it

is legally frivolous.

## C. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Here, it is clear that amendment would be futile. The fundamental premise of all of Smithson's claims is a legally frivolous claim that his service of a demand notice, and the defendants' failure to respond to it, created a binding contract under which they are obligated to pay him $250,000 per day of his incarceration—now approaching 400 days and $100 million. *See Brown*, 2006 WL 2869524, at *4 (finding amendment under similar circumstances futile). Moreover, his claims for damages against the state court, the district attorney's office, and the Pennsylvania State Police are clearly barred by Eleventh Amendment immunity, and his claims for damages against the presiding judge and prosecutors in his criminal case are clearly barred by judicial and prosecutorial immunity. *See Neitzke*, 490 U.S. at 327; *Ball v. Butts*, 445 Fed. App'x 457, 458 (3d Cir. 2011) (per curiam) (judicial immunity); *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th

Cir. 1991) (Eleventh Amendment immunity); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992) (prosecutorial immunity). Finally, the injunctive relief sought by Smithson—dismissal of the criminal charges against him and his release from incarceration—is simply not cognizable in a federal civil rights action. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release . . . .") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). It is therefore recommended that this action be dismissed *without* leave to amend.

## D. PLRA "Three Strikes" Warning

The plaintiff is hereby notified that a prisoner may not bring a civil action or appeal a civil judgment under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If this recommended disposition is adopted by the presiding

United States District Judge, the dismissal of this action as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), § 1915(e)(2)(B)(ii), and § 1915A(b)(1) will constitute a "strike" under 28 U.S.C. § 1915(g), and the accumulation of additional strikes may bar the plaintiff from proceeding *in forma pauperis* in later cases absent a showing of imminent danger. *See generally Byrd v. Shannon,* 715 F.3d 117, 126 (3d Cir. 2013) (articulating Third Circuit standard for application of § 1915(g) "three strikes" rule).

III.    RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The plaintiff's motion for a preliminary injunction (Doc. 23) be **DENIED**;

2.    The plaintiff's amended complaint (Doc. 9) be **DISMISSED** as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), § 1915(e)(2)(B)(ii), and § 1915A(b)(1); and

3.    The Clerk be directed to mark this case as **CLOSED**.

Dated: August 3, 2016                     *s/ Joseph F. Saporito, Jr.*
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTIAN MICHAEL
SMITHSON,

     Plaintiff,

     v.

THE YORK COUNTY COURT OF
COMMON PLEAS, et al.,

     Defendants.

CIVIL ACTION NO. 1:15-cv-01794

(KANE, J.)
(SAPORITO, M.J.)

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered

the foregoing Report and Recommendation dated August 3, 2016. Any

party may obtain a review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo

- 2 -

determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: August 3, 2016                    *s/ Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge